IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case No. 4:20cr00016 |
| | : |
| KUNTA KINTE DANIELS | : |

**SENTENCING MEMORANDUM**

COMES NOW the United States of America, by counsel, having considered the sentencing factors set forth in 18 U.S.C. §3553(a), and recommends that Mr. Daniels be sentenced to a total term of incarceration of 156 months, the high end of the range agreed upon in Daniels' plea agreement.

DISCUSSION

District courts generally must perform the following four steps in sentencing defendants: (1) properly calculate the sentencing range recommended by the advisory Guidelines; (2) determine whether a sentence within that range and within statutory limits serves the factors set forth in § 3553(a) and if it does not, select a sentence that does serve those factors; (3) implement any applicable mandatory statutory limitations; and (4) articulate on the record the reasons for selecting the particular sentence and especially, if applicable, explain why a sentence outside of the Sentencing Guidelines range better serves the relevant sentencing purposes set forth in § 3553(a) than one within it. *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006); *United States v. Booker*, 543 U.S. 220, 260-65 (2005); 18 U.S.C. § 3553(a).

I. The Defendant's Advisory Sentencing Guidelines Range

The Final Pre-Sentence Report was prepared on October 20, 2022.  ECF No. 178. Government submits that the PSR correctly calculates the Guidelines with a Total Offense Level

1

of 34, Criminal History Category VI, and a resulting guideline range of imprisonment of 262 months to 327 months.

   II.  A 156-month Sentence Satisfies the Section 3553(a) Factors

Section 3553 of Title 18 provides that "the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing.  18 U.S.C. § 3553(a). Specifically, when fashioning a sentence, the Court must consider the following:

   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

   (2) the goal of the Court to impose a sentence that:

   (A) reflects the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) affords adequate deterrence to criminal conduct;

   (C) protects the public from further crimes of the defendant; and

   (D) provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

   (3)  the kinds of sentences available;

   (4) the Guidelines and Guideline range;

   (5) any pertinent policy statements;

   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

   (7) the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a)(1)-(7); *Green*, 436 F.3d at 455-56. For the reasons stated below, the Section 3553(a) factors warrant a sentence below the guidelines and within the range set forth in Plea Agreement.

      A. <u>The Nature and Circumstances of the Offense</u>

The case against Mr. Daniels stemmed from an investigation of a conspiracy including Joe Ali Daniels, a codefendant in this case. Between April 2019 and December 2019, nine controlled purchases were made from Joe Daniels; three purchases of cocaine and six purchases of methamphetamine. One such controlled purchase occurred on September 4, 2019. On that date, the CI watched Kunta Daniels[1] hand the purchased methamphetamine to Joe Daniels immediately before Joe Daniels provided the methamphetamine to the CI.[2] PSR ¶ 21. Furthermore, although Joe Daniels would not name the source of the methamphetamine he sold to the CI on September 4, 2019, the statement of facts he signed, ECF No. 124, also corroborates the CI's account. In his statement of facts, Joe Daniels admitted that on September 4, 2019, the CI had to wait with Joe Daniels at his residence for the methamphetamine to arrive. ECF No. 124. Joe Daniels further admitted that after approximately 20 minutes another male arrived at his house and that he (Joe Daniels) then provided 27.29 grams (net weight 27.85 grams) of actual methamphetamine to the CI. *Id.*

Starting in November 2019, the investigation also revealed a pattern of movement showing Kunta Daniels' frequent use of an apartment one floor above his registered address. The pattern suggested that Mr. Daniels was using this apartment to store narcotics. PSR ¶ 22.

---

[1] The CI had known Kunta Daniels for many years.
[2] As explained in the PSR, the information provided by the CI was corroborated by audio recording and cell phone tolls.

3

In March of 2020, law enforcement executed a search warrant on Kunta Daniel's residence as well as the apartment one floor above as part of a murder investigation. Kunta Daniels now admits that this apartment a floor above his actual residence was maintained for the purpose of storing narcotics intended for distribution. ECF No. 162. The search of this "stash house" revealed the following:

1. Camouflage body armor, with armor plate found to the left of the bed in back right bedroom;
2. Food saver machine and food saver bags found in kitchen;
3. Black digital scale with residue found in kitchen cabinet;
4. Black digital scale with white residue found inside of a suitcase in back left bedroom;
5. Black digital scale with white residue found in kitchen cabinet;
6. Silver and black digital scale with white residence found in kitchen cabinet;
7. New Frontier Armory multi-caliber rifle (not loaded) found inside a dark colored duffel on the closet floor of the right rear bedroom;[3]
8. .223 ammunition from a magazine found in the bag with the rifle;
9. Remington Arms 12-guage shotgun found in the back right bedroom under a towel;
10. Glock 9mm found in the back right bedroom;
11. 9mm ammunition from the magazine in the Glock 9mm;
12. Sig Sauer 9mm pistol found on the left side of the living room couch;
13. 9mm ammunition from the Sig Sauer;
14. Multiple magazines;
15. Assorted ammunition;

---

[3] DNA testing was conducted on this item and Kunta Daniels was eliminated a major contributor to the mixture profile on this rifle.

4

16. Peanut butter jar and vegetable can with suspected narcotics found inside kitchen cabinet;

17. "TNT Press" found in a backpack under the sink;

18. Silver press found under the sink;

19. Press pieces found in a black suitcase in the left bedroom;

20. Currency counting machine;

21. 394 grams of heroin found in a trash bag box in kitchen closet;

22. 101 grams of cocaine base inside multiple bags from vegetable cans;

23. 55.35 grams cocaine base in multiple bags from peanut butter jar;

24. 14.77 grams cocaine base found inside a consumer food bag in the left rear bedroom closet;

25. .876 grams heroin found in a red Nike shoe box in the left rear bedroom closet;

26. 41.41 grams heroin found in the red Nike box;

27. 3.76 grams heroin from red Nike shoe box;

28. Multiple suboxone boxes in left rear closet;

29. 54 grams cocaine base found in a duffel in the right rear closet;

30. 490.99 grams phenacetin found in a dark colored duffel bag;

31. 325 grams cocaine hydrochloride found in a black Nike box in the right rear bedroom closet;

32. 56.71 grams of heroin from multiple bags in the black Nike shoe box in right rear bedroom closet.[4]

PSR ¶ 24.

This conduct is extremely serious. The investigation revealed that over the course of many months, Mr. Daniels was responsible for operating a large-scale distribution scheme. He

---

[4] The drug weights listed above are the weights and substances as determined by the laboratory.

maintained an entire residence just to store his narcotics and to (unsuccessfully) evade law enforcement detection. The search revealed tools of the trade including scales, presses, cutting agents, and at least three different types of illegal and dangerous narcotics. The stash house and its contents make clear that Mr. Daniels was running an ongoing, large-scale and sophisticated enterprise.

And most concerning, Mr. Daniels was ready to engage in violence in connection with this enterprise. Along with the narcotics and some of the proceeds of the enterprise, Daniels and any co-conspirators stored four firearms and a significant amount of ammunition and magazines. One of the firearms was found inside a duffel containing cocaine. The stash house also contained camouflage body armor with an armor plate. The only explanation for these weapons is that Mr. Daniels was prepared to defend his enterprise by using firearms inside a residential apartment complex. The presence of four firearms and body armor suggest nothing short of preparation for battle.

B. <u>The History and Characteristics of the Defendant</u>

Along with a previous conviction for obstruction of justice, Mr. Daniels has two prior convictions for selling cocaine. The repeat nature of Mr. Daniels' conduct is highly concerning. And for the reasons set forth in the PSR (ECF No. 178) and the government's previous filing at ECF No. 169, Mr. Daniels is a career offender.

However, the government notes that both of Mr. Daniels' prior controlled substance offenses occurred a long time ago. The offenses occurred 23 and 20 years prior to the commencement of the instant offense. And neither of the prior offenses appear to have involved firearms or violence.

For these reasons, the government submits that a sentence within the Guidelines, as correctly calculated, is greater than necessary under the Section 3353(a) factors. The parties have reached an agreement that Mr. Daniels be sentenced to a period of incarceration within the range of 120 to 156 months. ECF No. 158. The United States notes that if he was not a career offender, Mr. Daniels' Guidelines would be 151 to 188 months[5]. The United States' recommendation of 156 months is therefore within the guidelines as they would be calculated without the career offender enhancements.

### C. The Remaining Factors

As for the remaining factors under Section 3553(a), the government submits that the recommended sentence (1) promotes respect for the law by imposing a substantial, but not unnecessarily lengthy, sentence on a drug distributor; (2) imposes just punishment and deters Mr. Daniels from recidivism; (3) provides general deterrence by reminding the public that offenders of this nature will receive serious sentences; and (4) protects the public. A 156-month sentence is likewise consistent with the kinds of sentences available, creates no disparity among similarly-situated defendants and comports with general sentencing policy. Specifically, the recommended sentence does not create a disparity with the 87-month sentence of co-defendant Joe Daniels. While Kunta Daniels had at least some responsibility for methamphetamine distributed by Joe Daniels, there is no evidence of Joe Daniels' involvement with Kunta Daniels' stash house. Furthermore, Joe Daniels' criminal history placed him only in category II.

### CONCLUSION

For the reasons stated above, the government recommends that the Court impose a 156 sentence for Defendant Kunta Kinte Daniels. The recommendation accounts for both the

---

[5] Without the Chapter Four enhancement, Mr. Daniels would have a total offense level of 31 and a criminal history category of IV, leading to a guideline range of 151 to 188 months.

7

seriousness of the offense by seeking the high-end of the agreed upon "C" range and the Defendant's specific history by recognizing that a sentence within the Guidelines as enhanced by the Career Offender provisions is greater than necessary in this specific case.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

Date: October 28, 2022

*/s/ Rachel Barish Swartz*
Rachel Barish Swartz
Coleman Adams
Assistant United States Attorneys
Western District of Virginia
P. O. Box 1709
Roanoke, VA 24008-1709
Tel: (540) 857-2250
Fax: (540) 857-2283

## CERTIFICATE OF SERVICE

I hereby certify that on Friday, October 28, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send a copy of said filing to counsel for the defendant.

/s/ Rachel Barish Swartz
Assistant United States Attorney