**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**DANVILLE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **V.** | )     Case No. 4:20-CR-00016 |
| | ) |
| **KUNTA KINTE DANIELS** | ) |

**KUNTA DANIELS' SENTENCING MEMORANDUM**

Kunta Daniels comes before this Court to take responsibility for his actions. He has entered a plea of guilty to possession with intent to distribute a mixture and substance containing a detectible amount of cocaine, and a mixture and substance containing heroin. The government and Kunta have entered into a plea agreement pursuant to 11(C)(1)(c) requiring that the Court sentence Kunta to a range of imprisonment of between 120 and 156 months. After growing up in a single parent home in a deeply violent, poverty ridden, and drug infested neighborhood in Danville, Kunta was convicted at ages 19 and 23 of selling – in total – less than a gram of cocaine. These mistakes cost him nearly 15 years of his life. Since his release from the Virginia Department of Corrections at age 35, Kunta maintained steady employment, and worked to provide for his children, mother, and sister. Kunta deeply regrets returning to a lifestyle that has already cost him so much, and takes full responsibility for the mistakes he has made. For these reasons, as well as those in the arguments that follow, Kunta Daniels, by counsel, respectfully asks this Court to impose a sentence of 120 months incarceration, representing the low end of his 11(C)(1)(c) range.

**Guidelines Calculation**

Kunta is a 45-year-old man who has only been convicted of 3 crimes in his entire life. Unfortunately, when Kunta was 19 and 23 years old, Kunta was convicted of distributing – in total – 0.89 grams of cocaine. PSR 45-46. On the first offense, he served 19 months. On the second,

including the revocation of suspended time from his first conviction, he served 155 months. Due to the age of these convictions, as well as the confusing nature of the "good behavior for life" term of probation imposed by the Danville Circuit Court, the assigned United States Probation Officer originally calculated Kunta's advisory guidelines range as between 87 and 108 months. (ECF 168 at p. 16). Following the government's objections to the initial PSR, the assigned United States Probation Officer now designates Kunta as a career offender, and calculates his recommended guidelines range as between 262 and 327 months.

As Counsel noted in its response to the government's objections to the initial PSR, the advisory guidelines range of 87-108 months is "a fair representation of [Kunta's] conduct in the instant case." ECF 170. Kunta disputes that he has any involvement in the methamphetamines distribution alleged by the government, and disputes that this should be included as relevant conduct in the present case. More pertinently, however, the career offender guidelines are wholly inappropriate given Kunta's limited criminal history. At 45 years old, Kunta has only three convictions. The convictions that the government seeks to use to designate him as a career offender occurred when he was 19 and 23 years old. For selling a total of 0.89 grams of cocaine, Kunta was punished severely, serving a total of nearly 15 years in prison. Further, based on one of these convictions, the government has filed a sentencing enhancement under 21 U.S.C. § 851 to increase the mandatory minimum sentence he will receive for his actions from five years of imprisonment to ten. Counsel submits that this sentencing enhancement alone appropriately holds Kunta accountable for his previous mistakes. Should the Court determine that a career offender designation is appropriate, Kunta, by counsel, respectfully asks the Court to vary downward and to impose a sentence of 120 months, representing the low end of his 11(c)(1)(C) range.

**Kunta Daniels' History and Characteristics and the Nature of the Offense**

Kunta grew up in a deeply violent, poverty ridden, and drug infested neighborhood in Danville. As a young teen, he fell under the wing of the drug dealers who ran his neighborhood and had plied him with drugs and alcohol starting at 14 years old. PSR 65-66. Even though Kunta was an intelligent young man and strong student, they coerced him to drop out of high school his senior year so that he could fully take part in the neighborhood industry. PSR 71.

It is especially notable that Kunta grew up in this environment without any semblance of a male role model. Kunta never met his biological father. PSR 56. His mother worked long hours to provide for him and his sister. In an environment ran by drug dealers, it is sadly unsurprising that Kunta followed the crowd around him. While these circumstances may not excuse Kunta's criminal history, they do help to explain how he obtained two convictions for selling cocaine as a young man. Courts have routinely recognized that "lack of male parental guidance is a known, significant contributor to crime." *United States v. Bannister*, 786 F. Supp.2d 617, 642 (E.D.N.Y. 2011). Kunta, by counsel, submits that these circumstances should mitigate the impact of these convictions on the sentence imposed by this Court. S*ee United States v. Armstrong*, 07 CR 874 (JBW), 2008 WL 5459177, at *2 (E.D.N.Y. Dec. 22, 2008) (sentencing defendant to half the Guidelines range, where court observed that "[t]he offense is serious. The defendant was a member of a gang that disturbed the peace and threatened the safety of a public housing project. [But] Armstrong's childhood was affected by inadequate parental control.").

Kunta received little benefit from following the crowd. He reports that he had to give most of the money he made to the large-scale drug dealers running the neighborhood. PSR 56. Kunta was clearly at the bottom of the pyramid in this enterprise. At 19, he was captured in controlled buys selling extremely small quantities of cocaine, respectively 0.18, 0.13, and 0.11 grams – a total

of 0.42 grams. PSR 45. After completing a 19-month prison sentence, Kunta reported wanting nothing more to do with this lifestyle. Desperate to escape, and lacking the guidance or tools to know how to do anything else, Kunta reports that he went out of his way to get arrested as a 23-year-old in 2000. PSR 56. At that point, he was still selling extremely small quantities of cocaine. He made sales to a suspected informant of 0.15, 0.15, 0.07, and 0.1 grams – a total of 0.47 grams. PSR 46. Kunta paid dearly for this decision. He was not only sentenced to 90 months imprisonment for these distributions, but the court also imposed an additional 65 months as a suspended sentence for his earlier conviction. For selling a grand total of 0.89 grams of cocaine, Kunta served a sentence of 174 months – 14.5 years.

Between the ages of 19 and 35, Kunta was incarcerated for all but around two years. During this time, he completed his GED, but received no other vocational training in the rough Virginia Department of Corrections facilities in which he was incarcerated. Nonetheless, upon his release, Kunta worked diligently to build a life for himself away from the drug dealing lifestyle that was so familiar to him. He maintained steady employment between 2012 and 2020 repossessing vehicles and working as a personal trainer. Other than a lone misdemeanor offense – a conviction that did not lead to a violation of his condition of good behavior for life – he stayed out of trouble. He became a dedicated father to his five-year-old daughter, Kinya, and one-year-old daughter, Amourah. He also worked to support his mother, Carol, and his sister Kizzy, who is her full-time caregiver.

Despite these successes, the environment Kunta returned to was not an easy one to navigate. PSR 61-62. Shortly after he returned home to Danville, he suffered a gunshot wound in his leg. A few years later, he suffered a more serious gunshot wound in the same leg that required multiple surgeries and caused immense pain. *Id*. In the aftermath of his first gunshot wound,

4

Kunta began abusing the opiate medication he was prescribed, and developed an ongoing habit that continued until the time of his arrest. PSR 69.

Seeking to fuel this opiate habit and to provide more for his loved ones, Kunta returned to selling drugs to supplement his income. He deeply regrets letting his family down, and makes no excuses for his actions. He has spent the last two years deeply ashamed that he returned to a lifestyle that has already cost him so much. He looks forward to returning to the strong support network he enjoys upon his release, and to returning to the steady employment that he enjoyed for the eight years before his arrest.

### A Sentence of 120 Months' Imprisonment Promotes Adequate Deterrence, Provides Just Punishment, and Reflects the Seriousness of the Offense

Balancing the considerations contained in 18 U.S.C. Section 3553(a)(2)(A), a sentence of 120 months of imprisonment is reasonable, fair, and sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. There is no question that possessing cocaine and heroin with the intent to distribute them is an exceedingly serious offense and the Guidelines reflect its gravity. However, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings …". *Gall v. United States*, 128 S.Ct. 586, 598 (2007). In the present case, there are numerous reasons why a sentence of 120 months imprisonment, representing the low end of the 11(C)(1)(c) range agreed to by Kunta and the government, is especially appropriate.

First, Kunta has already suffered immensely for his limited criminal history. Although he accepts full responsibility for his actions, Counsel notes that Kunta has already served a 14.5-year sentence for selling less than a gram of cocaine total at ages 19 and 23 years old. As the court recognized in *U.S. v. Moreland*, "[t]he Career Offender Guideline provisions provide no

5

mechanisms for evaluating the relative seriousness of the underlying prior convictions." 366 F.Supp.2d 416, 424 (2005). Although selling cocaine is a serious offense, both the age of these offenses and the small weights that underlie them counsel that the career offender guidelines range would provide a punishment that is far greater than necessary to promote the goals of federal sentencing. The posture of these sentences is also so confusing that the assigned United States Probation Officer did not originally designate him as a career offender, and calculated his guidelines range as 87-108 months. The low end of the 11(c)(1)(C) range in this case – 120 months – is already significantly higher than the top end of this eminently reasonable initial calculation. Further, pursuant to the plea agreement entered in this case, Kunta is subject to a mandatory minimum sentence of 120 months because the government entered an 851 sentencing enhancement based on a prior conviction. Accordingly, a sentence of 120 months already accounts for Kunta's criminal history and provides a severe consequence for his past mistakes.

Additionally, Kunta's criminal history is mitigated by his age and environment at the time of the offenses. Courts have widely recognized that youthfulness "is a mitigating factor deriv[ing] from the fact that the signature qualities of youth are transient, the impetuousness and recklessness that may dominate in younger years can subside." *Johnson v. Texas*, 509 U.S. 350, 368 (1993). Kunta deeply regrets returning to a lifestyle that has already cost him so much. Counsel respectfully asks this Court to consider, however, that his prior offenses occurred no later than 20 years before the instant offense. Lacking guidance or supervision in a drug ravaged section of Danville, Kunta followed the crowd in his late teens and early twenties – before his brain had an opportunity to fully develop. He was punished severely for his actions, and spent the bulk of his twenties and half of his thirties in some of the roughest facilities in Virginia's Department of Corrections. We submit that a sentence of 120 months imprisonment appropriately accounts for

Kunta's criminal history and actions given how long ago they occurred, and his age at the time of the offenses.

Further, Kunta enjoys a strong support network that remains ready to support him after he completes his sentence. He is a dedicated provider and maintains strong relationships with his family and young children. Despite his incarceration, he works to stay in the lives of his children, mother, and sister, and looks forward to their support upon his release. Kunta deeply regrets that his actions will cost him the chance to enjoy numerous milestones, and will prevent him from being able to provide for his loved ones. Kunta was successful at his job repossessing cars, and was particularly devoted to his work as a personal trainer. He has the tools to be a dedicated part of any workplace, and regrets that he returned to the fool's gold of selling drugs in a desperate attempt to do more for those he loves, and to support his opiate habit. After being out of custody for nearly 8 years – his first extended period of freedom in his adult life – he has spent the last two years in custody fully aware of all that his actions have cost him, and determined to avoid these mistakes upon release. Kunta looks forward to leaning on this support network following the completion of his sentence, and knows that he has the tools in place to avoid the mistakes of his past as a productive member of society.

There is also nothing to suggest that incarceration beyond 120 months would deter Kunta from reoffending. The United States Sentencing Commission Retroactivity & Recidivism report dated July 8, 2020 demonstrated that there was no difference in recidivism rates among similarly situated individuals even where one group received on average 37 months of incarceration less than the other group. Specifically comparing the recidivism of 7,121 offenders who were released on average 37 months early through the "drugs minus two" reduction, with 7,132 offenders who would have been eligible for the same reduction but had been released before the amendment, the

7

Commission found no statistically significant difference in the recidivism rates. This accords with the National Institute of Justice's prior research about deterrence: the *certainty* of being caught is a vastly more powerful deterrent than the severity of the punishment itself. The same reasoning suggests a sentence of incarceration longer than 120 months is not necessary to deter Kunta.

Sentencing Kunta to more than 120 months incarceration is also unnecessary to protect the public. The following graph highlights the decline in criminal activity with age.



Kunta is presently 45 years old. A sentence of 120 months imprisonment would incapacitate him for the remainder of his 40's, and place him in the category for individuals released when they are over 50 – a category that has a significantly lower recidivism rate than younger age groups. Further, Kunta's limited criminal history includes no crimes of violence. In conjunction with his age, this counsels that incarceration beyond 120 months would be unnecessary to protect the public.

## **CONCLUSION**

For the foregoing reasons, a sentence of 120 months' imprisonment is reasonable, fair, and sufficient but not greater than necessary, to punish Kunta Daniels for his conduct. Mr. Daniels plans to present no more than two witnesses at his sentencing hearing, whose names will be provided to the Court and government once their availability has been confirmed.

                                        Respectfully submitted,

                                        KUNTA KINTE DANIELS

                                        /s  Anthony F. Anderson

Anthony F. Anderson, VSB #21345
Brooks A. Duncan, VSB #87476
ANDERSON LEGAL
P. O. Box 1525
Roanoke, Virginia   24007
(540) 982-1525 (phone)
(540) 982-1539 (fascimilie)
afa@afalaw.com

       *Counsel for Defendant Kunta Kinte Daniels*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of October, 2022, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s  Anthony F. Anderson